Shauntez Keyonn Rockemore
FULL NAME

N/A
COMMITTED NAME (if different)

CSP, 4A4R-22, PO BOX 3476, Corcoran, CA 93212
FULL ADDRESS INCLUDING NAME OF INSTITUTION

BH6391
PRISON NUMBER (if applicable)

FILED
CLERK, U.S. DISTRICT COURT
MAR 29 2021
CENTRAL DISTRICT OF CALIFORNIA
BY DTA DEPUTY

EDCV21-0550-VAP-ADS

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

I/M S. Rockemore

PLAINTIFF,

C/O V. Aguirre, C/O M. Vasquez, C/O L. Castellanos, C/O R. Gutierez, C/S C. Fortson II, C/L R. Allen

DEFENDANT(S).

CASE NUMBER

To be supplied by the Clerk

CIVIL RIGHTS COMPLAINT
PURSUANT TO *(Check one)*

☑ 42 U.S.C. § 1983
☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971)

A. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner: ☐ Yes ☑ No

2. If your answer to "1." is yes, how many? ____________

Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

a. Parties to this previous lawsuit:
Plaintiff ______

Defendants ______

b. Court ______

c. Docket or case number ______

d. Name of judge to whom case was assigned ______

e. Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it appealed? Is it still pending?) ______

f. Issues raised: ______

g. Approximate date of filing lawsuit: ______

h. Approximate date of disposition ______

**B. EXHAUSTION OF ADMINISTRATIVE REMEDIES**

1. Is there a grievance procedure available at the institution where the events relating to your current complaint occurred? ☑ Yes ☐ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☑ Yes ☐ No

   If your answer is no, explain why not ______

3. Is the grievance procedure completed? ☑ Yes ☐ No

   If your answer is no, explain why not ______

4. Please attach copies of papers related to the grievance procedure.

**C. JURISDICTION**

This complaint alleges that the civil rights of plaintiff IM Shaun Netz K. Rockemore, BH6391
(print plaintiff's name)

who presently resides at CSP, 4A4R-22, PO Box 3476, Corcoran, CA 93212,
(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at C/O V. Aguirre, C/O M. Vasquez, C/O L. Castellanos, C/O R. Gutierez, C/S C. Fortson II — CRC Institution - HFC - facility C, Norco, CA 92860
(institution/city where violation occurred)

CIVIL RIGHTS COMPLAINT

on (date or dates) 12/20/2019 Excessive Force (Claim I), 12/20/2019 Inadequate Medical Attention (Claim II), 12/20/2019 Substantive Due Process (Claim III).

**NOTE:** You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1. Defendant C/O V. Aguirre (full name of first defendant) resides or works at
CRC Institution, HFC - Facility C, Norco, CA 92860 (full address of first defendant)
Floor Officer, Facility C-306, Correctional Officer (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☑ individual ☐ official capacity.

Explain how this defendant was acting under color of law:
The defendant employed an exorbitant force, that resulted in a serious injury, engendered for punishment.

2. Defendant C/O Marth Vazquez (full name of first defendant) resides or works at
CRC institution, HFC Facility C, Norco, CA 92860 (full address of first defendant)
Floor officer, Facility C-307, Correctional Officer (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☑ individual ☐ official capacity.

Explain how this defendant was acting under color of law:
The defendant descried an unlawful use of force and was derilect with deliberate indifference, to a serious medical need.

3. Defendant C/O L. Castellanos (full name of first defendant) resides or works at
CRC Institution, HFC - Facility C, Norco, CA 92860 (full address of first defendant)
C-SEC, PAT 1, Correctional Officer (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☑ individual ☐ official capacity.

Explain how this defendant was acting under color of law:
The defedant descried an unlawful use of force and was aware of a serious injury requiring immediate medical attention, and acted with deliberate Indifference.

4. Defendant C/O R. Gutierez resides or works at
(full name of first defendant)
CRC Institution, HFC Facility C, Norco, CA 92860
(full address of first defendant)
C-CUL, Correctional Officer
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☑ individual ☐ official capacity.

Explain how this defendant was acting under color of law:
The defendant descried an unlawful use of force and was aware of a serious injury requiring immediate medical attention, and acted with deliberate indifference.

5. Defendant C/S C. Fortson II resides or works at
(full name of first defendant)
CRC Institution, HFC, Facility C, Norco, CA 92860
(full address of first defendant)
Facility C Program Sergeant, Correctional Sergeant
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☑ individual ☐ official capacity.

Explain how this defendant was acting under color of law:
The defendant was aware of a serious injury ~~requiring~~ requiring immediate medical attention and acted with diliberate indifference.

on (date or dates) ______________ (Claim I), ______________ (Claim II), ______________ (Claim III).

**NOTE:** You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

6. 1. Defendant C/L R. Allen (full name of first defendant) resides or works at

CRC Institution, HFC-Facility C, Norco, CA 92860 (full address of first defendant)

Facility C Program Lieutenant, Correctional Lieutenant (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☑ individual ☑ official capacity.

Explain how this defendant was acting under color of law:

the defendant was aware of a serious injury requiring immediate medical attention and acted with deliberate indiffence.

2. Defendant ______________ (full name of first defendant) resides or works at

______________ (full address of first defendant)

______________ (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual ☐ official capacity.

Explain how this defendant was acting under color of law:

3. Defendant ______________ (full name of first defendant) resides or works at

______________ (full address of first defendant)

______________ (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual ☐ official capacity.

Explain how this defendant was acting under color of law:

**D. CLAIMS***

**CLAIM I**

The following civil right has been violated:

The Eighth Amendment was contravened by way of an application of an undully use of force, which prohibits cruel and unusual punishment insofar as the use of force was not utilized in an effort to maintain or restore order, but was a deliberate, sadistic and pernicious act occasioned by malice to engender physical harm.

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

On December 20, 2019, at CRC institution, Facility C OLO corridor, during the post 1200 – 1215 Hours unlock-period, defendant C/O V. Aguirre entered the threshhold of dorm (307) and summoned an inmate to retrieve the plaintiff I/M S. Rockemore to the fore of the dorm. Consequently plaintiff I/M S. Rockemore responded, and was directed by the defendant to exit the dorm. Thereafter, the defendant C/O V. Aguirre asked the plaintiff, I/M S. Rockemore "what did you call me?" The defendant retorted, "I called you a lame." The defendant C/O V Aguirre forthwith availed a canister of pepper spray and aimed it the plaintiff I/M S. Rockemore's countenance. However, the defendant C/O V. Aguirre retracted his canister of pepper spray and availed his handcuffs. Thenceforward, the defendand I/M S. Rockemore aquiesced, and was forthwith escourted by the defendant, C/O V. Aguirre, wherein he began pushing and simultaneously contorting the plaintiff I/M S Rockemore, prior to picking him up and "body slamming" to the left side; thereby, fracturing his left-posterior rib eight, and causing bilateral lung contusions.

**If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.*

## D. CLAIMS*

**CLAIM I**

The following civil right has been violated:

The Eighth Amendment prohibition of cruel and unusual punishment due to inadequate medical care was contravened through a concerted deliberate indifference to an acute medical need.

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

① On December 20, 2019, the defendant C/O M. Vasquez responded to an escort request by C/O V. Aguirre, adjacent to dorm 307, of facility C at CRC Institution, whereby, she served ~~as~~ to assist the escort of defendant I/M S. Rockemore, and observed C/O V. Aguirre "body slamming" the plaintiff I/M S. Rockemore. In an endeavor to conceal the illicit act of her codefendant, C/O M. Vasquez, did not contact medical, notwithstanding the defendant, I/M S. Rockemore was recumbent to the floor, unable to breath.

② On December 20, 2019: C/O Castellanos and C/O R. Gutierez respondended ~~to~~ an escort request, "prior to an institutional call" and descerned an illicit use of force in the facility C corridor of CRC Institution and failed to notify medical. Moreover, to undergird the aforestated, I was placed in C/O Castellanos and C/O R. Gutierez custody, and promptly placed in Holding Cell #1, of the C BLD facility office; wherein, I promulgated, in the presence of both C/O Castellanos and C/O R. Gutierez, that I had a fractured rib, and request medical attention to no avail, through both officers reticence and indifference

*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.*

D. Claims

Claimed II (continued)

Supporting Facts:

(3) On December 20, 2019, at CRC Institution, Facility C Command Office, plaintiff 1/M S. Rockemore conferred with defendant, Sergeant C. Fortson II, in the prescence of his commanding officer, codefendant Lieutenant R. Allen, to participate in a video interview in lieu of plaintiff 1/M S. Rockemore's declaration of "assault and battery" through exorbitant force engendered by codefendant, C/O V. Aguirre. Prior to the onset of the video interview, plaintiff, 1/M S. Rockemore promulgated unambiguously to defendant, Sergeant C. Fortson II, construing the onslaught he [1/M S. Rockemore] had incurred by his [Sergeant C. Fortson II] codefendant, C/O V. Aguirre, fractured his [1/M S. Rockemore] rib and consequently, experiencing pain while breathing — a declaration that saliently necessitates forthwith medical attention. Per contra, instead of contacting medical care, Sergeant C. Fortson II retorted with levity "how do you know?" And the plaintiff, 1/M S. Rockemore exclaimed "I heard it break when I hit the floor and can feel the pain where it's at." Notwithstanding, the defendant, Sergeant C. Fortson II interpolated with derision "your just soar;" hense, rescinded plaintiff 1/M S. Rockemore's promulgation of his [1/M S. Rockemore] acute need of forthwith medical care, and expeditiously commenced the video

interview; while, simultaneously enumerating notations of plaintiff I/M S. Rockemore's "bruises and contusions on his [I/M S. Rockemore] left anterior torso (the implicit location of the fractured and partially displaced rib-eight, evidenced via x-ray results at CIM Institution on 12/23/2019) on a CDCR-7219 Medical Form of Injury or Unusual Occurrence — a veritable violation of CDCR policies, via apriori: a medical evaluation is to be executed by medical staff, only. Nevertheless, the discoursed medical form was finalized at some unknown juncture, lacking the prescence of plaintiff I/M S. Rockemore, and endorsed by L. Guthrie-Reed, RN — occasioned for the attainment of excising the plaintiff, I/M S. Rockemore's injuries from the Rules and Violation Report (RVR# 6947401), to provide recourse to codefendant, C/O V. Aguirre's delineation of his [C/O V. Aguirre] employment of immediate force, that consequently contravenes the ipso facto of plaintiff I/M S. Rockemore's injuries; an egrigious and concerted perversion, recumbent upon defendant Sergeant C. Fortson II as the facilitator.

④ On December 20, 2019, at CRC Institution, Facility C. Command Office, defendant, Lieutenant R. Allen supervised his minion, codefendant, Sergeant C.

Fortson II, conducting a video interview with plaintiff I/M S. Rockemore, whereby, defendant R. Allen was cognizant of the plaintiff, I/M S. Rockemore's need for immediate medical care, through his [I/M S. Rockemore] promulgation of a fractured rib. Wherefore, as the commanding official, Lieutenant R. Allen was derilict of his command by not utilizing executive authority, via directing codefendant, Sergeant C. Fortson II, through an imparative, to forthwith summon medical, or take the initiative — an overt predication of Lieutenants R. Allen's complicity, nay the imputation is recombent by his hegemony manifested through his [... Allen] aquiescence of the intrique, apropo of codefendants sergeant C. Fortson II malefeascence to circumvent codefendant, C/O Y. Aguirre's sadistic perversion of assault, contrived to unbridle reproach and furnish impunity. Withal, the aforementioned was undergirded with an immediate consignment to CIM Institution, wherein the plaintiff, I/M S. Rockemore was evaluated by medical, Ergo, effacing the plaintiff, I/M S. Rockemore's injuries from the Rules and Violation (RVR) Report and Medical Records at CRC Institution and asunder them into another CDCR Institution facility data base as a consequence of the transfer, providing a convenient benifensce.

**D. CLAIMS***

**CLAIM I I I**

The following civil right has been violated:

The Fourteenth Amendment substantive due process right "to be secure in one's person" was contravened by a melicious use of force engendered to cause harm while the subject was in restraints.

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

On December 20, 2019 at CRC Institution, Facility C, adjacent to dorm (307), the plaintiff ~~contravened his~~ I/M S. Rockemore contravened his intuition inorder to adhere to state laws, and not allow a frivolous contention to become exascerbated by allowing the defendant C/O V. Aguirre to subjugate him in restraints. Whereby, the defendant C/O V. Aguirre feigned an escort, contrieved to assault the plaintiff I/M S. Rockemore through an illicit use of force by "body slamming" him on the cement floor."

*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.*

**E. REQUEST FOR RELIEF**

I believe that I am entitled to the following specific relief:

In the individual capacity, I [I/M8. Rockemore] have the conviction that the appropriate and equiable trajectory to be redressed, as a consequence of violations of eighth and fourteenth Admendment Constitutional rights, through an unconsummated employ of force, which resulted in a serious injury and, the negation of appropriate medical care, prior to transferrence betwixt institutions and promptly after an application of immeddate force, which concluded in an avoidable medical emergency the following morn, for a sojurn in an infirmary for bi-lateral lung contusions, with the inclusion of six months pain and suffering and ongoing psycological trauma. I [I/M8. Rockemore] hereby request the remuneration of $200,000 from defendant C/O V. Aguirre, $10,000 from defendant C/L R. Allen, $5,000 from C/S C. Fortson II, $2,500 from C/O R. Gutierez, $2,500 from C/O L. Costellanos and, $1,250 from C/O M. Vasquez, for the aggregation of $221,250.

Moreover, in the official capacity, I [plaintiff, I/M 8. Rockemore] hereby request an injunction for the curtailment of abuse by prison officials at CRC Institution, by imploring the federal court to mandate C/L R. Allen to install cameras in the corridors and obscure localities of the facilities at CRC Institution; to imbue prison officials to utilize integrety, varacity and to conduct themselves with good-faith. Futhermore, I [I/M S. Rockemore] request an injunction, for the federal court to mandate Correctional Lieutenant R. Allen to implement compulsory anger management training and certification to ameliorate the conditions at CRC Institution, by mitigating the employ of force through inculcations.

03/24/2021
(Date)

(Signature of Plaintiff)

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
OFFICE OF APPEALS
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# THIRD LEVEL APPEAL DECISION

Date: February 11, 2021

In re: Rockemore, Shauntez, BH6391
COR

TLR Case No.: 2004713
Local Log No.: CRC-20-00199

**I. ISSUE ON APPEAL:**

Appellant alleges on December 20, 2019, Correctional Officer (CO) V. Aguirre used excessive force during an incident resulting in a broken rib.

**II. CONTROLLING AUTHORITY:**

**A. CONTROLLING AUTHORITY:**

- California Penal Code 832.7 and 832.8
- California Code of Regulations, Title 15, (CCR) Section 3084.9(A) and 3391
- Departmental Operations Manual (DOM) Section 33030.3.1 and 54100.25

**B. DOCUMENTS CONSIDERED:**

- CDCR 602 Appeal Form Log No.: CRC-20-00199
- Institutional Executive Review Committee Evaluation dated January 7, 2020
- CDCR 837 Crime/Incident Report Log No. CRC-HFC-19-12-0329 dated December 20, 2019

**III. FINDINGS:**

The Office of Appeals (OOA) found by a preponderance of the documented evidence available that all applicable policies were followed and that all relevant decisions and actions by the institution were proper relative to the staff complaint. The allegation of staff misconduct presented in the written complaint was reviewed and completed at the institution (CRC). The inquiry included a review of the evidence, an evaluation of any interview conducted and a review of current laws, policies and procedures. The appellant was informed that all staff personnel matters are confidential in nature. The inquiry was completed and it was found that staff **did not** violate policy with respect to the issue appealed. The appeal was partially granted in that an inquiry was completed and has been reviewed. The Office of Appeals Examiner reviewed the available documentation and concurs with the institution's determination. The institution's response complies with departmental policy and the appellant's staff complaint allegation was properly addressed.

**IV. CONCLUSION AND ORDER: DENIED**

After a thorough review of all documents and evidence, it is the order of the Office of Appeals that the appeal at the Third Level of Review is **DENIED.** This decision exhausts the administrative remedies available to the appellant with CDCR.

W. SINKOVICH, Appeals Examiner
Office of Appeals
cc: Warden, CRC
Grievance Coordinator, CRC, COR

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

IAB USE ONLY 2004713

Institution/Parole Region: Log #: Category:
COR 20.00425 7
CRC-X-20-00199 7

FOR STAFF USE ONLY

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available. See California Code of Regulations (CCR), Title 15, Section 3084.1. You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that led to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

**Appeal is subject to rejection if one row of text per line is exceeded.** **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| ROCKEMORE, SHAUNTEZ | BH6391 | Z118L ASU | ASU |

**State briefly the subject of your appeal (Example: damaged TV, job removal, etc.):**

Rule and Violation Hearing – RVR 6947401

**A. Explain your issue (If you need more space, use Section A of the CDCR 602-A):**

The RVR prepared by CRC institution for Men failed to state in their report that I had a broken Rib and need medical attention, In contrast to the aforementioned, it was documented that I had no serious injuries and refused medical care.

**B. Action requested (If you need more space, use Section B of the CDCR 602-A):**

I hereby request the following course of actions: Appeal RVR 6947401 and request a new hearing due to the ommited aforesaid information which is pertinent and to pursue Battery Charges with Great Bodily Injuries (GBI) upon Officer

**Supporting Documents:** **Refer to CCR 3084.3.**

☒ Yes, I have attached supporting documents.

List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):

Patient Education Material Pamphelet

☐ No, I have not attached any supporting documents. Reason :

**Inmate/Parolee Signature:** **Date Submitted:**

☐ **By placing my initials in this box, I waive my right to receive an interview.**

STAFF USE ONLY

CSP-CORCORAN RECEIVED JAN 29 2020 INMATE APPEALS OFFICE

RECEIVED FEB 05 2020 CRC APPEALS OFFICE

Fwd to COR on 1/24/20 via GMail

REC BY OOA APR 17 2020

**C. First Level - Staff Use Only** **Staff – Check One: Is CDCR 602-A Attached?** ☒ Yes ☐ No

This appeal has been:

☒ Bypassed at the First Level of Review. Go to Section E.
☐ Rejected (See attached letter for instruction) Date: Date: Date: Date:
☐ Cancelled (See attached letter) Date:
☐ Accepted at the First Level of Review.

Assigned to: Title: Date Assigned: Date Due:

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.

Date of Interview: Interview Location:

BYPASS

Your appeal issue is: ☐ Granted ☐ Granted in Part ☐ Denied ☐ Other:

See attached letter. If dissatisfied with First Level response, complete Section D.

Interviewer: (Print Name) Title: Signature: Date completed:

Reviewer: (Print Name) Title: Signature:

Date received by AC:

**AC Use Only**
**Date mailed/delivered to appellant** ___/___/___

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

**INMATE/PAROLEE APPEAL**

CDCR 602 (REV. 03/12)

Side 2

**D. If you are dissatisfied with the First Level response**, explain the reason below, attach supporting documents and submit to the Appeals Coordinator for processing within 30 calendar days of receipt of response. If you need more space, use Section D of the CDCR 602-A.

BYPASS

**Inmate/Parolee Signature:** ____ **Date Submitted:** ____

**E. Second Level - Staff Use Only**

**Staff – Check One: Is CDCR 602-A Attached?** ☒ Yes ☐ No

This appeal has been:

☐ By-passed at Second Level of Review. Go to Section G.
☒ Rejected (See attached letter for instruction) Date: 1/29 Date: ____ Date: ____ Date: ____
☐ Cancelled (See attached letter)
☒ Accepted at the Second Level of Review

Assigned to: AW FAC Title: AW Date Assigned: 2/6/2020 Date Due: 3/19/2020

Second Level Responder: Complete a Second Level response. If an interview at the Second Level is necessary, include interviewer's name and title, interview date and location, and complete the section below.

Date of Interview: ____ Interview Location: ____

Your appeal issue is: ☐ Granted ☒ Granted in Part ☐ Denied ☐ Other: ____

See attached letter. If dissatisfied with Second Level response, complete Section F below.

Interviewer: ____ (Print Name) Title: ____ Signature: ____ Date completed: ____

Reviewer: CYNTHIA Y. TAMPKINS (Print Name) Title: WARDEN Signature: [signature]

Date received by AC: 3/19/20

**AC Use Only**
**Date mailed/delivered to appellant** 3, 23, 2020

**F. If you are dissatisfied with the Second Level response,** explain reason below; attach supporting documents and submit by mail for Third Level Review. It must be received within 30 calendar days of receipt of prior response. Mail to: Chief, Inmate Appeals Branch, Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, CA 94283-0001. If you need more space, use Section F of the CDCR 602-A.

I'm appealing to the Third Level due to the void of varacity that emaneated from the Second Level of response via: Lieutenant R Morales's modification of statements I made during the two video interviews and contorting my assertions in our discourse within the telephonic interview; both which are contained in the enclosed memorandum conscripted by Lieutenant R Morales; fraught with insencerity, contrevening his oath as a Peace Officer in his endeavor to

**Inmate/Parolee Signature:** [signature] **Date Submitted:** 04/06/2020

**G. Third Level - Staff Use Only**

This appeal has been:

☐ Rejected (See attached letter for instruction) Date: ____ Date: ____ Date: ____ Date: ____ Date: ____
☐ Cancelled (See attached letter) Date: ____
☒ Accepted at the Third Level of Review. Your appeal issue is ☐ Granted ☐ Granted in Part ☒ Denied ☐ Other: ____

See attached Third Level response.

**Third Level Use Only**
**Date mailed/delivered to appellant** 2, 12, 21

**H. Request to Withdraw Appeal:** I request that this appeal be withdrawn from further review because; State reason. (If withdrawal is conditional, list conditions.)

Inmate/Parolee Signature: ____ Date: ____

Print Staff Name: ____ Title: ____ Signature: ____ Date: ____

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| 2004713 | CRC-X-20-00199 | 20·00425 | 7 |

FOR STAFF USE ONLY

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.

**Appeal is subject to rejection if one row of text per line is exceeded. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| SHACUNTEZ ROCKEMORE | BH6391 | 2118L ASU | AS[illegible] |

**A. Continuation of CDCR 602, Section A only (Explain your issue) :** Aguirre at CRC Institution for Men of BLD. C - Dormatory 306 on 12/20/19 at ~~[illegible]~~ 02:25 for the use of excessive force and falsification of data on the RVR Report. Futhermore, questions were not answered completely on RVR Supplemental.

I was refused medical treatment at CRC and was consigned to Chino institution for Men ASEG and told them of my medical needs and was shecdueled an X-Ray. The following Morn (12/21/19) I was placed in their Infirmary due/during convulsions that were a direct result of Office Aguirre's onslaught of excessive use of force which transcended California Code of Regulations.

Additionally, It was confirmed at CRC Institution for Men via interpretation of X-Ray Results by Doctor "..." MD that I have a fractured RIB Eight which more importantly contridicts Officers Auguirre's documented immediate use of force.

Inmate/Parolee Signature: [signature] Date Submitted: 01/28/20

CSP-CORCORAN RECEIVED JAN 29 2020 INMATE APPEALS OFFICE

RECEIVED FEB 05 2020 CRC APPEALS OFFICE

REC BY OOA APR 17 2020

STAFF USE ONLY

**B. Continuation of CDCR 602, Section B only (Action requested):** ~~to protect himself and his subordinates. Specifically Officer Aguirre's Misuse and Excessive use of force which resulted in fracturing my anterior rib eight, and framing me for Battery on a Peace officer on his RVR; Sergeant Fortson documentation on the final RVR, which he asserted "that no major injuries and was evaluated by medical; a RN from medical fraud-ulently declaring that she evaluated me, and documented that I had no major injuries; and Lieutenant R Morales, Sergeant Fortson and Peace Officer Gutierrez negations of my myriad requests to go to medical; instead, they sent me to a 115 Hearing for a prior offense of disrupting institutional count; wherein, I told them, once more, of my fractured rib. Enclosed, I've provided an enumeration of extractions from Lieutenant R. Morales's memorandum that will envince the dichotomousness and untruthfulness of his statements that coersed Warden Cynthia Tampkins to resolve unknowingly an inequitable and erroneous decision, in respect to her negation of my appeal at the Second Level.~~

Inmate/Parolee Signature: [signature] Date Submitted:

STATE OF CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION

**INMATE/PAROLEE APPEAL FORM ATTACHMENT**

CDCR 602-A (REV. 03/12)

Side 2

**D. Continuation of CDCR 602, Section D only (Dissatisfied with First Level response):**

**Inmate/Parolee Signature:** ______ **Date Submitted:** ______

**F. Continuation of CDCR 602, Section F only (Dissatisfied with Second Level response):** to protect himself and his subordinates. Specifically officer Aguirre's misuse and excessive use of force which resulted in fracturing my anterior rib eight; and Framing me for Battery on a Peace Officer on his RVR; Sergeant Fortson documentation on the finale RVR, which he asserted: "I had no major injuries and was evaluated by medical; a Registered Nurse from BLD C's Infirmary fraudulently report that she evaluated me and documented that I had no major injuries; and Lieutenant R Morales, Sergeant Fortson and Peace Officer Gutierrez negation of the myriad requests I made to be evaluated by medical for my fractured rib; instead, they coursed me to a 115 hearing for a prior offense "disrupting institutional count," wherein, I told them, once more, of my fractured rib and I can't sit down as a result. Enclosed, I provided an enumeration of extractions from Lieutenant R Morales's memorandum that will evince the dichotomous and untruthfulness of his assertions that resolved an inequitable and erroneous conclusion, in respect to the negation of my appeal at the second level.

**Inmate/Parolee Signature:** [signature] **Date Submitted:** 04/06/2020

Attachment E-1

State of California

Department of Corrections and Rehabilitation

# Memorandum

Date: March 19, 2020

To: Inmate Shauntez Rockemore, BH6391
Building 4A, Bed 1 Low
California State Prison - Corcoran

Subject: **STAFF COMPLAINT RESPONSE - APPEAL # CRC-X-20-00199 SECOND LEVEL RESPONSE**

**APPEAL ISSUE:** You allege staff at the California Rehabilitation Center acted in a manner resulting in violation of California Code of Regulations (CCR), Title 15, Section 3391(a), Employee Conduct. You allege on December 20, 2019, Correctional Officer V. Aguirre utilized excessive force during an incident.

All issues unrelated to the allegation of staff misconduct must be appealed separately and will not be addressed in this response. You do not exhaust administrative remedies on any unrelated issue not covered in this response or concerning any staff member not identified by you in this complaint. If you are unable to name all involved staff you may request assistance in establishing their identity.

**DETERMINATION OF ISSUE:** A review of the allegations of staff misconduct presented in the written complaint has been completed. Based upon this review your appeal is:

- Being processed as an Appeal Inquiry.

On Friday, December 12, 2019, at approximately 1530 hours, Correctional Lieutenant R. Allen conducted a video-recorded interview with you in the Facility C Sergeant Program Office. The purpose of this interview was to ascertain information into the allegation of excessive force alleged. During the videotaped interview, you were cooperative and explained during the incident you were in handcuffs while being escorted down the Facility C Corridor by Officer Aguirre. You allege during the escort Officer Aguirre pushed forward against you and pushed you down to the ground causing pain. You stated "My left side hurts, I can't really breathe.
I thought my rib might be broke. I have minor swelling on my wrist. There was only a white inmate out, I don't think he saw it."

On Friday, December 12, 2019, at approximately 2102 hours, Correctional Lieutenant P. Trevino conducted a video-recorded interview with you in the California Institution for Men (CIM) Administrative Segregation Committee Office. The purpose of this interview was to ascertain information into the allegation of excessive force. During the videotaped interview, you were cooperative and explained during the incident you were in handcuffs while being escorted down the Facility C Corridor by Officer Aguirre. You allege during the escort Officer Aguirre

pushed forward against you. You stated, "I kept asking him to stop pushing me. I had no idea, I just tried to drop my weight to protect myself, next thing I know I was up in the air hit this side on the ground and I heard a crack and I couldn't breathe. I think the lady in my dorm may have witnessed it."

On Wednesday, February 26, 2020, Lieutenant R. Morales conducted a telephonic interview with you due to the fact you are housed at the California State Prison, Corcoran. You explained you were walking back to your assigned Dorm 307, when Officer Aguirre ordered you to stop and submit to restraints. You explained Officer Aguirre did not like you and there had been arguments between you two, which was approximately 4 times total. You stated while being escorted down the Facility C Corridor, Officer Aguirre was pushing you as if you were not complying with the escort. You stated you attempted to lower your body weight by kneeling downward when Officer Aguirre lifted you up into the air and slammed you down to the ground causing pain on the left side of your body and rib cage area. You stated while on the ground you complied with orders and the use of force stopped. You stated Officers R. Gutierrez and L. Castellanos responded and escorted you to the Facility C Program area.* You explained you were medically evaluated by a nurse and interviewed by a sergeant before you were transferred to CIM. You stated you want a new hearing for Rules Violation Report (RVR) 6947401 Battery on a Peace Officer. You also request Officer Aguirre be arrested and charged with Battery on an Inmate Resulting in Great Bodily Injury for the Use of Force during the incident.

Your appeal is **PARTIALLY GRANTED** in that:

The **Appeal inquiry** is complete/has been reviewed and all issues were adequately addressed.

The following witnesses were questioned: Officers V. Aguirre, M. Vasquez, L. Castellanos, R. Gutierrez, and Inmates D. Snelson (BH3645), D. Sicklerhendrix (BG4827), D. Lonigro (BI5002), and M. Seiffert (BJ1338).

The following information was reviewed as a result of your allegations of staff misconduct: California Department of Corrections and Rehabilitation (CDCR) 602 Inmate/Parolee Appeal, Log Number CRC-X-20-00199; CDCR 7219 Medical Report of Injury or Unusual Occurrence; CDCR 3013-2 Inmate Interview for Allegations worksheet; CDCR 3014 Report of Findings-Inmate Interview; Strategic Offender Management System; 837-C Incident Report; Crime Scene Photo Evidence Log; Institutional Executive Review Committee Critique and Qualitative Evaluation; CDCR 7385 Authorization For Release Of Protected Health Information; Administrative Segregation Unit Placement Notice; Rule Violation Report (6947401); Dorm 307 Housing Roster

Staff: ***did*** ☐ ***did not*** ☒ violate CDCR policy with respect to one or more of the issues appealed.

ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE.

- As such, the details of any inquiry will not be shared with staff, members of the public, or offender appellants.

- Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process. A variety of personnel actions may be initiated by the Department based upon the content of your complaint and the outcome of any investigation or inquiry conducted as a result of your complaint.
- Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process.

If you wish to appeal the decision and/or exhaust administrative remedies, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Secretary's/Third Level of Review. Once a decision has been rendered at the Third Level, administrative remedies will be considered exhausted.

Name R. MORALES Sign [signature] 3-19-20
Interviewer Date

Name CYNTHIA Y. TAMPKINS WARDEN Sign [signature] 3/20/20
Hiring Authority Date

RECEIVED
FEB 05 2020
CRC APPEALS OFFICE

**CSP – CORCORAN**
**MEDICAL RECORDS DEPARTMENT**
**FILE REVIEW**

NAME SHAUNTEZ ROCKEMORE DATE 01|28|20

CDC# BH6391 HOUSING Z 118 L ASU

MEDICAL RECORDS HAS RECEIVED YOUR REQUEST TO REVIEW/RECEIVE MEDICAL RECORD COPIES. OUR GOAL IS TO REDUCE YOUR COPYING COST AND EXPEDITE YOUR REQUEST. PLEASE BE SPECIFIC WITH THE INFORMATION YOU ARE REQUESTING AND THE REASON FOR YOUR REQUEST. THANK YOU FOR YOUR COOPERATION.

| MARK SECTION | INFORMATION NEEDED | DATES NEEDED |
|---|---|---|
| | DOCTOR ORDERS | |
| | PROGRESS NOTES | |
| | MEDICATION RECORDS* | |
| | PUBLIC HEALTH/VACCINES* | |
| | LAB REPORTS | |
| | X-RAY REPORTS | 12\|20\|19 – 01\|28\|20 |
| | CONSULTATIONS/SPECIALTY | |
| | CHRONO'S | |
| | DENTAL RECORDS | |
| | HOSPITAL/INFIRMARY STAYS | 12\|20\|19 – 12\|22\|19 |
| | MENTAL HEALTH RECORDS** | |
| | OTHER (PLEASE SPECIFY) | CRC institution Medical Service 12/20/19 – 12/20/19 |

* Need approval prior to release.
**Needs approval from mental health clinician prior to release.

REASON FOR REVIEW:

INMATE/PATIENT SIGNATURE: [signature] DATE: 01|28|20

Date Received by Medical Records: By:

RECEIVED
FEB 05 2020
CRC APPEALS OFFICE

**Patient education materials**

# Rib Fracture

A rib fracture is a break or crack in one of the bones of the ribs. The ribs are a group of long, curved bones that wrap around your chest and attach to your spine. They protect your lungs and other organs in the chest cavity. A broken or cracked rib is often painful, but most do not cause other problems. Most rib fractures heal on their own over time. However, rib fractures can be more serious if multiple ribs are broken or if broken ribs move out of place and push against other structures.

Rib Fracture

## CAUSES

- A direct blow to the chest. For example, this could happen during contact sports, a car accident, or a fall against a hard object.
- Repetitive movements with high force, such as pitching a baseball or having severe coughing spells.

## SYMPTOMS

- Pain when you breathe in or cough.
- Pain when someone presses on the injured area.

## DIAGNOSIS

Your caregiver will perform a physical exam. Various imaging tests may be ordered to confirm the diagnosis and to look for related injuries. These tests may include a chest X-ray, computed tomography (CT), magnetic resonance imaging (MRI), or a bone scan.

## TREATMENT

Rib fractures usually heal on their own in 1–3 months. The longer healing period is often associated with a continued

cough or other aggravating activities. During the healing period, pain control is very important. Medication is usually given to control pain. Hospitalization or surgery may be needed for more severe injuries, such as those in which multiple ribs are broken or the ribs have moved out of place.

## HOME CARE INSTRUCTIONS

- Avoid strenuous activity and any activities or movements that cause pain. Be careful during activities and avoid bumping the injured rib.
- Gradually increase activity as directed by your caregiver.
- Only take over-the-counter or prescription medications as directed by your caregiver. **Do not** take other medications without asking your caregiver first.
- Apply ice to the injured area for the first 1–2 days after you have been treated or as directed by your caregiver. Applying ice helps to reduce inflammation and pain.
  - Put ice in a plastic bag.
  - Place a towel between your skin and the bag.
  - Leave the ice on for 15–20 minutes at a time, every 2 hours while you are awake.
- Perform deep breathing as directed by your caregiver. This will help prevent pneumonia, which is a common complication of a broken rib. Your caregiver may instruct you to:
  - Take deep breaths several times a day.
  - Try to cough several times a day, holding a pillow against the injured area.
  - Use a device called an incentive spirometer to practice deep breathing several times a day.
- Drink enough fluids to keep your urine clear or pale yellow. This will help you avoid constipation.
- **Do not** wear a rib belt or binder. These restrict breathing, which can lead to pneumonia.

## SEEK IMMEDIATE MEDICAL CARE IF:

- You have a fever.
- You have difficulty breathing or shortness of breath.
- You develop a continual cough, or you cough up thick or bloody sputum.
- You feel sick to your stomach (*nausea*), throw up (*vomit*), or have abdominal pain.
- You have worsening pain not controlled with medications.

## MAKE SURE YOU:

- Understand these instructions.
- Will watch your condition.
- Will get help right away if you are not doing well or get worse.

This information is not intended to replace advice given to you by your health care provider. Make sure you discuss any questions you have with your health care provider.

Document Released: 12/18/2006 Document Revised: 08/20/2014 Document Reviewed: 02/19/2014
Elsevier Interactive Patient Education ©2016 Elsevier Inc.

RECEIVED
FEB 05 2020
CRC APPEALS OFFICE

From: Shauntez Rockemore, BH6391
Reason: Screening at the Third Level
Subject: Appeal # CRC-X-20-00199 Secound Level Response
Date: April 20, 2020

in the enumeration below, I will endeavor to evince how Lieutenant R Morales altered statements from my video interviews and our telephonic discourse to compass an expedient negation at the secound Level; I will accomplish this by first, extracting out pertinent statements; and then compare them to what I origanally asserted:

* Vedio Interview. 12/[illegible]/2019, 3:30pm, by; Lieutenant R Allen, CRC
Extraction: "... pushed forward against you and pushed you down to the ground causing pain..." "...thought my rib might be broke..."

My statement: "... pushed me forward, I told him to stop pushing me I'm cooperating with your escourt, I told him to stop pushing me again. He then grabed my arm, pushed me into him, lifted me up, tilted back and slammed me..." "... He broke my rib..." I was asked how do you know. I stated "... because I heard it crack and I can feel the pain where it's broke..."

Extraction:
"...There was only a white inmate out, I dont think he saw it..."

My statement: "... an inmate retrieved me from 307-8L and told me an Officer wanted to see in the front of the dorm,.." "I didn't

remember who he was,)"... an inmate came to the threshold of 307 to ask me if I was OK..." (he was black.) I was then asked, do you know his name and I replied with "no." I was then told you don't have a witness if you don't know his name. (I did know what he look like and where his bunk was.) To put this into perspective, the only occurence of the discoursed event that was witnessed was Officer Aguirre in my dorm to retrieve after unlock period.

*Telephonic Interview, 02/26/2020, by: Lieutenant R Allen

Extraction: "You explained you were walking back to your assigned Dorm 307, when officer Aguirre ordered you to stop and submit into restraints."

My statement: I stated, "while walking to dorm 307, Officer Aguirre was staring at me; and I said what are you looking at lame; and he said what did you call me. He then came to my dorm (307) and had an inmate summon me to him in the front of our dorm, adjacent to the TV and Game room; and request me to come out to the hallway. He then asked me what did I call him?"

Extraction: "You stated you attempted to lower your body weight by kneeling downward..."

- I never made such a statement

Extraction: "... causing pain on the left side of your body..."

My statement: "I landed on the left back side of my body with

Officer Aguirre superimposed above me; I heard a loud crack and I couldn't breath for [aproximantly] two minutes. He then proceeded to turn me over [supine]; put his knee into my back; and radioed a code one. ("the only thing he said in the duration of the escourt; thus, he never warned me by yelling "get down!")

Extraction: "You stated while on the ground you complied with orders and the use of force stopped."

— I never made such a statement. The context of this statement is to provide the guise that I must not been complient prior to the use of force, I would surmise.

Extraction: You explained you were medically evaluated by a nurse ... before you were transfered to CIM

— I never made such a statement; and I assure you that my singniture can not be produced in the medical Records of CRC on that date of 12/20/2019 that proves I was medically evaluated.

*Video Interview, 12/20/2019, 9:02 pm, by Lieutenant P Trevino, CIM
Extraction: "I had no idea, I just tried to drop my weight to protect myself..."

— This is where he confounded my statements
My statement: "I had no idea, If I did, I would have tried to drop my weight to protect myself."
— The aforestatement was a seperate statement outside of context of Officer Aguirre body slamming me in restraints.
— I never endeavored to drop my weight insofar as I never had

an oppertunity to protect myself from his pernicious onslaught.

Additionally, there where no inmates that witnessed the escort. In fact, the only witnesses are only the Peace Officers that are accounted for on the finale RVR, which are: Officers M Vasquez and L Castellanos. Both Officers negated equally that the couldn't see how I was taken down or me elbowing Officer Aguierre (while I was in restraints, with him holding my right arm, with him on the far right side).

Conclusion

I never commited to any statements declaring that I was pushed forward to the ground by Officer Aguirre during the escort at CRC, BLD C on December 20, 2019. I've consistantly made the same declarations in both vedio interviews, and the RVR Mental Health Assessments of how Officer Aguirre assailed me. The vedio interviews of December 20, 2019 at CRC and CIM can be observed; The RVR Mental Health Assesment can be perused; however, I assure you that Lieutenant R Morales cannot produce ~~our telephonic~~ a recording of our telephonic interview that had taken place on February 26, 2020.

Truly,
Shawntez Rockemore, BH6391

Postscript: I apologize for my discursiveness and sloveness,

CIM - California Institution for Men

Patient: ROCKEMORE, SHAUNTEZ KUIOUN
DOB/Age/Sex: 8/27/1973 / 47 years / Male CDCR: BH6391

## Admit/Discharge/Transfer Forms

No data exists for this section

## Ambulatory Intake Forms

**Initial Health Screening-Male Entered On: 12/20/2019 18:54 PST**
**Performed On: 12/20/2019 18:42 PST by Almanzor, Jennifer RN**

**Patient Encounter Information**
*ENCTR Information :* Encounter Info: Patient Name: SHAUNTEZ ROCKEMORE,DOB: 08/27/1973,,FIN: 10000000612114798BH6391,Facility: CIM,Encounter Type: Institutional Encounter

Almanzor, Jennifer RN - 12/20/2019 18:42 PST

**General Information**
*Type of Screening :* R&R Interfacility
*Rr-Receiving Institution: :* California Institution for Men
*Sending Institution: :* California Rehabilitation Center
*Date, Time of Arrival: :* 12/20/2019 18:44 PST
*Primary Language :* English
*Does the Inmate have Diabetes? :* No

Almanzor, Jennifer RN - 12/20/2019 18:42 PST

**Vitals/Ht/Wt**
*Temperature Oral :* 36 DegC(Converted to: 96.8 DegF)
*Peripheral Pulse Rate :* 83 bpm

Almanzor, Jennifer RN - 12/20/2019 18:42 PST

*Respiratory Rate :* 18 br/min

Almanzor, Jennifer RN - 12/20/2019 18:57 PST
~~{[28 br/min (HI) ] - previously charted by Almanzor, Jennifer RN at 12/20/2019 18:42 PST};~~

*SpO2 :* 100 %
*Systolic/Diastolic BP :* 140 mmHg
*Systolic/Diastolic BP :* 79 mmHg
*Mean Arterial Pressure, Cuff :* 99 mmHg
*O2 Therapy :* Room air
*Pain Present :* Yes actual or suspected pain
*Weight Dosing :* 65.77 kg(Converted to: 145 lb 0 oz, 144.998 lb)
*Height/Length Dosing :* 177.8 cm(Converted to: 5 ft 10 in, 5.83 ft, 70.00 in)
*Weight Measured :* 65.77 kg(Converted to: 145 lb 0 oz, 144.998 lb)
*Height/Length Measured :* 177.8 cm(Converted to: 5 ft 10 in, 5.83 ft, 70.00 in)
*Body Mass Index Measured :* 20.8 kg/m2

Almanzor, Jennifer RN - 12/20/2019 18:42 PST

**Pain Assessment**

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID: 33039370 Print Date/Time: 9/11/2020 10:29 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

**CIM - California Institution for Men**

Patient: **ROCKEMORE, SHAUNTEZ KUIOUN**
DOB/Age/Sex: 8/27/1973 / 46 years / Male CDCR: BH6391

## *Progress Notes*

| | |
|---|---|
| Document Type: | Progress Note-Nurse |
| Document Subject: | left side pain |
| Service Date/Time: | 12/20/2019 19:01 PST |
| Result Status: | Auth (Verified) |
| Perform Information: | Cabanas,Alissa RN (12/20/2019 19:02 PST) |
| Sign Information: | Cabanas,Alissa RN (12/20/2019 19:02 PST) |
| Authentication Information: | Cabanas,Alissa RN (12/20/2019 19:02 PST) |

**Encounter Info:** Patient Name: SHAUNTEZ ROCKEMORE,DOB: 08/27/1973,CDCR: BH6391,FIN: 10000000612114798BH6391,Facility: CIM,Encounter Type: Institutional Encounter

Screen pt for AD SEG at 1805. Pt c/o left flank pain x3 hrs. Pt states, when he was at CRC, he was carried and slammed on the floor by custody. Pt c/o left rib pain. Upon assessment, pt with pain and tenderness to left flank. No swelling or deformities noted. Area tender to touch and movement. 1840 Dr. Hamkar made aware. Per Dr. Hamkar, order Tylenol #3 and have pt followed up the next day. Breathing even and unlabored. Lung sounds WNL.

Electronically Signed on 12/20/2019 07:02 PM PST

Cabanas, Alissa RN, RN

---

| | |
|---|---|
| Document Type: | Outpatient Progress Note |
| Document Subject: | Schedule error |
| Service Date/Time: | 12/31/2019 10:12 PST |
| Result Status: | Auth (Verified) |
| Perform Information: | Daniel,Chancelor P&S (12/31/2019 10:13 PST) |
| Sign Information: | Daniel,Chancelor P&S (12/31/2019 10:13 PST) |
| Authentication Information: | Daniel,Chancelor P&S (12/31/2019 10:13 PST) |

It was a schedule error as patient was as already seen by me on 12/24/2018 for exactly the same thing

**Encounter Info:** Patient Name: SHAUNTEZ ROCKEMORE,DOB: 08/27/1973,CDCR: BH6391,FIN: 10000000612114798BH6391,Facility: CIM,Encounter Type: Institutional Encounter

---

| | |
|---|---|
| Document Type: | Outpatient Progress Note |
| Document Subject: | Interfacility transfer and chest x-ray follow-up |
| Service Date/Time: | 12/24/2019 10:21 PST |
| Result Status: | Auth (Verified) |
| Perform Information: | Daniel,Chancelor P&S (12/24/2019 10:43 PST) |
| Sign Information: | Daniel,Chancelor P&S (12/24/2019 10:43 PST) |
| Authentication Information: | Daniel,Chancelor P&S (12/24/2019 10:43 PST) |

**Subjective**
46-year-old man s/p battery/altercation on 12/19/2019 from CRC, is here today as interfacility transfer and also for follow-up for chest x-

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID: 28654367 Print Date/Time: 4/23/2020 13:41 PDT

**WARNING:** **This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.**

**CIM - California Institution for Men**

Patient: **ROCKEMORE, SHAUNTEZ KUIOUN**
DOB/Age/Sex: 8/27/1973 / 46 years / Male CDCR: BH6391

## *Assessment Forms*

Scheduled: (1)
tolnaftate 1% Cream NP 1 app, Topical, BID-KOP- stated not working
Continuous: (0)
PRN: (0)
*Assessment :* Alteration in comfort R/T trauma secondary to assault.
*Plan :* Health education and explanation of treatment plans.
*Sp-Intervention :* Explained to patient he's scheduled for x-rays of both his ribs today , continue to take pain meds prescribed , and he would be re examined by his PCP here in Palm Hall.
*Education :* Pt. verbalized understanding.
*Disposition To: :* Return to housing
*Referral Required :* No

Lising, Evelyn RN - 12/23/2019 13:36 PST

**Pain Assessment**
*General Pain Location :* Other: L ribs and his whole L side and low back pain.
*Quality :* Aching
*Time Pattern :* Constant
*Pain Onset/Duration :* Assault 12/20/19
*Preferred Pain Tool :* Numeric rating scale
*Numeric Pain Scale :* 10 = Worst possible pain
*Numeric Rating at Rest :* 10 = Worst possible pain
*Numeric Rating With Activity :* 10 = Worst possible pain
*Acceptable Pain at Rest, Numeric :* 0 = No pain
*Acceptable Pain With Activity, Numeric :* 0 = No pain

Lising, Evelyn RN - 12/23/2019 13:36 PST

---

**SOAPE Entered On: 12/21/2019 11:54 PST**
**Performed On: 12/21/2019 9:45 PST by DeSilva, Charith RN**

**Patient Encounter Information**
*ENCTR Information :* Encounter Info: Patient Name: SHAUNTEZ ROCKEMORE,DOB: 08/27/1973,,FIN: 10000000612114798BH6391,Facility: CIM,Encounter Type: Institutional Encounter

DeSilva, Charith RN - 12/21/2019 11:23 PST

**SOAPE**
*Sp-Clinical Findings :* Ray from B-yard palm hall called regarding a pt that is having severe pack pain. Upon arrival to Palm Hall noted pt is in bed AAO but was complaining of pain 10/10 and stated he is unable to get out of bed due to pain. (Comment: Custody asked pt to stand up multiple times but he was unable to do it and started tearing up. Pt was assisted by 3 custody officers and was placed on to a wheelchair to transport back to TTA. During the transfer process another mandown occurred at B yard in Birch that took higher priority. Explained the situation to the inmate and he was placed in the tank. Made pt aware that the nurse will bring him back to TTA ASAP for further evaluation. 0910: came back to B yard to pick up

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID: 28654367 Print Date/Time: 4/23/2020 13:41 PDT

**WARNING: This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.**

**CIM - California Institution for Men**

Patient: **ROCKEMORE, SHAUNTEZ KUIOUN**
DOB/Age/Sex: 8/27/1973 / 46 years / Male CDCR: BH6391

## *Assessment Forms*

inmate. With assistance from custody got pt into the gurney and was transferred by via state van to TTA. 0935: pt arrived to TTA in stable condition and is still complaining of pain 10/10. Assisted pt to transfer from bed to gurney. Nursing assessment was performed. Noted his lung sounds are clear but stated it hearts too much to take a deep breath. Pt stated I was body slam yesterday at CRC in the afternoon by custody and I heard my rib crack. Presently pt is taking shallow breaths, v/s stable. Denies any radiating pain to any other extremities, no numbness or tingling to hands or feet. Dr Shah is in TTA and is currently at bedside and evaluating the pt. Dr Shah given orders for Toradol IM 60mg x1. Orders were carried out and was medicated as directed. Will continue to monitor pt closely.1000: pt is resting in bed. Was able to use the urinal. Stated his pain is improved at 8/10. No facial grimacing, or tearing noted. Pt appears comfortable and having a sandwich but is still reluctant to move in bed.1100: pt is resting in bed. V/s stable. Encourage pt to move around in bed if the pain is improved. Pt verbalized understanding and agree with plan of care. 1140: pt is resting in bed. Stated his pain 4/10 as long as he is not moving. With movement the pain goes back to an 8/10. Pts breathing is even and unlabored and educated pt on the plan of care. Pt will have Motrin prn and will have a Xr of ribs Monday, and will follow up with RN. Pt agree with plan of care. Will monitor pt closely and will place a call for Dr Shah for a update.1330: pt stated his pain is 2/10 when resting. pt was able to get out of bed and ambulate around the gurney himself in slow steady pace. Educated pt on pain management, side effects and plan of care and he Verbalized understanding. Pt was d/c from TTA in stable condition via gurney. [DeSilva, Charith RN - 12/21/2019 14:30 PST] )

DeSilva, Charith RN - 12/21/2019 13:15 PST

*Chief Complaint :* left lower rib pain in the back
*Information Given By :* Self
*Sp-Allergy Check Done :* No
*Sp-Medication List Checked :* Yes
*Sp-Past Medical History Checked :* Yes
*Sp-Event Prior-Triggered Chief Complaint :* per pt he got body slam in CRC before he was transfered to CIM
*Pain Present :* Yes actual or suspected pain
*Temperature Oral :* 36.6 DegC(Converted to: 97.9 DegF)
*Peripheral Pulse Rate :* 63 bpm
*Respiratory Rate :* 16 br/min
*Systolic Blood Pressure :* 112 mmHg
*Diastolic Blood Pressure :* 76 mmHg
*Mean Arterial Pressure, Cuff :* 88 mmHg
*SpO2 :* 100 %
*Medication Compliance :* Medications (1) Active
complaint with medication per pt

Scheduled: (1)
tolnaftate 1% Cream NP 1 app, Topical, BID-KOP- stated not working
Continuous: (0)
PRN: (0)
*Assessment :* Alteration in comfort R/t to left rib pain Aeb pt stated pain 10/10
*Plan :* Nursing assessment, v/s, pain management
call Dr shah
possible chest X ray
*Sp-Intervention :* Dr shah evaluated pt in TTA
Toradol 60mg IM

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID: 28654367 Print Date/Time: 4/23/2020 13:41 PDT

**WARNING:** **This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.**

**CIM - California Institution for Men**

Patient: **ROCKEMORE, SHAUNTEZ KUIOUN**
DOB/Age/Sex: 8/27/1973 / 46 years / Male CDCR: BH6391

## *Trauma*

### Trauma Mechanism of Injury

Textual Results
T3: 12/21/2019 09:45 PST (Mechanism of Injury)
Other: per pt he was assault by custody
T4: 12/21/2019 09:45 PST (Mechanism of Injury)
Other: per pt he was assault by custody

### Triage Information

| | |
|---|---|
| Recorded Date | 12/21/2019 |
| Recorded Time | 09:45 PST |
| Recorded By | DeSilva,Charith RN |
| Procedure | |
| Treatments Prior to Arrival | None |

### Mechanism of Injury

| | | | |
|---|---|---|---|
| Recorded Date | 12/21/2019 | 12/21/2019 | 12/21/2019 |
| Recorded Time | 09:54 PST | 09:45 PST | 09:45 PST |
| Recorded By | Ray,Amy Psych Tech | DeSilva,Charith RN | DeSilva,Charith RN |
| Procedure | | | |
| Mechanism of Injury | See Below T2 | See Below T3 | See Below T4 |

Textual Results
T2: 12/21/2019 09:54 PST (Mechanism of Injury)
Other: PER IM, HE WAS INJURED AT CRC
T3: 12/21/2019 09:45 PST (Mechanism of Injury)
Other: per pt he was assault by custody
T4: 12/21/2019 09:45 PST (Mechanism of Injury)
Other: per pt he was assault by custody

### Chief Complaint

| | | | | |
|---|---|---|---|---|
| Recorded Date | 12/31/2019 | 12/25/2019 | 12/24/2019 | 12/23/2019 |
| Recorded Time | 08:49 PST | 15:05 PST | 10:10 PST | 09:54 PST |
| Recorded By | Flores,Jenny MA | Leon,Marie RN | Flores,Jenny MA | Lising,Evelyn RN |
| Procedure | | | | |
| Chief Complaint | F/u trauma to ribs, f/u on xray | See Below T5 | See Below T6 | RN f/u |

Textual Results
T5: 12/25/2019 15:05 PST (Chief Complaint)
VITALS AND RIB ASSESSMENT S/P ASSAULT MD ORDER
T6: 12/24/2019 10:10 PST (Chief Complaint)

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID: 28654367 Print Date/Time: 4/23/2020 13:41 PDT

**WARNING:** **This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.**

**CIM - California Institution for Men**

Patient: **ROCKEMORE, SHAUNTEZ KUIOUN**
DOB/Age/Sex: 8/27/1973 / 46 years / Male CDCR: BH6391

## *Progress Notes*

Patient continues to have pain, worse when he sleeps or lies on the left side. He denies difficulty breathing, shortness of breath, hemoptysis or hematemesis.

**Objective**

Vitals & Measurements
**T:** 36.5 °C (Oral) **HR:** 72 (Peripheral) **RR:** 16 **BP:** 123/76 **SpO2:** 100% **WT:** 65.7 kg **WT:** 65.7 kg (Wt dosing)

Physical Exam

Head: atraumatic, normocephalic
Eyes: Pupils equal, round, and reactive to light
Ears: tympanic membranes intact, canals clear
Nose: grossly normal, mucosa moist and pink
Mouth: normal dentition, buccal mucosa moist and pink, oropharynx unremarkable
Neck: carotid pulses 2+, trachea midline, no thyromegaly or masses
Back: spine erect, nontender, no costovertebral angle tenderness
Heart: S1S2 regular, without clicks, gallops, murmurs, or rubs
Lungs: clear to auscultation
chest: No evidence of any deformity; positive tenderness left posterior rib area with pressure and deep inspiration
Abdomen: planar, bowel sounds present, no organomegaly, masses, or tenderness
Neurologic:
Cranial nerves II-XII grossly intact
Strength: V/V

Diagnostic Results

CLINICAL INDICATION: trauma, rule out fracture COMPARISON: None TECHNIQUE: 7 Views of the chest and rib cage were acquired
FINDINGS: Normal heart size. Lungs and pleural spaces clear.
No pneumothorax. Mildly displaced posterior left eighth rib fracture.
IMPRESSION: Mildly displaced posterior left eighth rib fracture. Electronically Signed by: BBrown, MD Date Signed: 12/23/2019 3:32 PM

**Assessment/Plan**
Bilateral contusion of ribs
Interfacility transfer

Positive fracture eighth rib mildly displaced
Increase Motrin from twice daily to 400 3 times daily
Okay acetaminophen No. 3 one p.o. 3 times daily x3 days
Nortriptyline 25 mg 1 p.o. nightly to start on 12/27/2019
Capsaicin 0.025% apply twice daily

PRN return to clinic follow-up
Routine healthcare PCP follow-up 360 days

We discussed a healthy diet, regular exercise program, and maintenance of ideal body weight. Patient understands the recommendation

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

**WARNING:** **This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.**

CIM - California Institution for Men

Patient: ROCKEMORE, SHAUNTEZ KUIOUN
DOB/Age/Sex: 8/27/1973 / 47 years / Male CDCR: BH6391

## Orders

Pharmacy

Order: **nortriptyline**
Order Date/Time: 12/24/2019 10:30 PST
Order Start Date/Time: 12/24/2019 14:00 PST
Order Status: Canceled Department Status: Canceled Activity Type: Pharmacy
End-state Date/Time: 12/24/2019 10:34 PST End-state Reason:
Ordering Physician: Daniel,Chancelor P&S Consulting Physician:
Entered By: Daniel,Chancelor P&S on 12/24/2019 10:30 PST
Order Details: 25 mg, Oral, Cap, Once a day at bedtime, Administration Type DOT, Automatic Refill, Order Duration: 14 day, First Dose: 12/24/19 2:00:00 PM PST, Stop Date: 12/24/19 10:34:12 AM PST
Order Comment: Open and Float; Heat Risk Medication

Order: **capsaicin topical (capsaicin 0.025% topical cream)**
Order Date/Time: 12/24/2019 10:30 PST
Order Start Date/Time: 12/24/2019 14:00 PST
Order Status: Discontinued Department Status: Discontinued Activity Type: Pharmacy
End-state Date/Time: 1/7/2020 16:31 PST End-state Reason:
Ordering Physician: Daniel,Chancelor P&S Consulting Physician:
Entered By: Daniel,Chancelor P&S on 12/24/2019 10:30 PST
Order Details: 1 app, Topical, Cream, TID-KOP, Administration Type KOP, Order Duration: 60 day, First Dose: 12/24/19 2:00:00 PM PST, Stop Date: 1/7/20 4:31:13 PM PST
Order Comment:

Order: **ibuprofen (Motrin)**
Order Date/Time: 12/21/2019 12:01 PST
Order Start Date/Time: 12/21/2019 12:01 PST
Order Status: Completed Department Status: Completed Activity Type: Pharmacy
End-state Date/Time: 12/28/2019 12:00 PST End-state Reason:
Ordering Physician: Shah,Bhaviesh P&S Consulting Physician:
Entered By: DeSilva,Charith RN on 12/21/2019 12:01 PST
Order Details: 400 mg, Oral, Tab, TID, PRN pain, Administration Type NA, Order Duration: 7 day, First Dose: 12/21/19 12:01:00 PM PST, Stop Date: 12/28/19 12:00:00 PM PST
Order Comment: Dr shah is aware about possible drug Interaction between toradol and Ibuprofen

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID: 33039370 Print Date/Time: 9/11/2020 10:29 PDT

WARNING: This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

CIM - California Institution for Men

Patient: ROCKEMORE, SHAUNTEZ KUIOUN
DOB/Age/Sex: 8/27/1973 / 47 years / Male CDCR: BH6391

## Orders

### Pharmacy

Order: **ibuprofen (Motrin)**
Order Date/Time: 12/21/2019 11:40 PST
Order Start Date/Time: 12/21/2019 11:40 PST
Order Status: Discontinued Department Status: Discontinued Activity Type: Pharmacy
End-state Date/Time: 12/21/2019 00:01 PST End-state Reason:
Ordering Physician: Shah,Bhaviesh P&S Consulting Physician:
Entered By: Shah,Bhaviesh P&S on 12/21/2019 11:40 PST
Order Details: 400 mg, Oral, Tab, TID, PRN pain, Administration Type NA, Order Duration: 7 day, First Dose: 12/21/19 11:40:00 AM PST, Stop Date: 12/21/19 12:01:00 AM PST
Order Comment:

Order: **ketorolac**
Order Date/Time: 12/21/2019 09:49 PST
Order Start Date/Time: 12/21/2019 09:49 PST
Order Status: Completed Department Status: Completed Activity Type: Pharmacy
End-state Date/Time: 12/21/2019 10:07 PST End-state Reason:
Ordering Physician: Shah,Bhaviesh P&S Consulting Physician:
Entered By: DeSilva,Charith RN on 12/21/2019 09:49 PST
Order Details: 60 mg, IM, Soln, Once, PRN pain, Administration Type NA, First Dose: 12/21/19 9:49:00 AM PST
Order Comment:

Order: **acetaminophen-codeine**
Order Date/Time: 12/20/2019 18:48 PST
Order Start Date/Time: 12/20/2019 19:00 PST
Order Status: Completed Department Status: Completed Activity Type: Pharmacy
End-state Date/Time: 12/20/2019 19:16 PST End-state Reason:
Ordering Physician: Hamkar,Behroz P&S Consulting Physician:
Entered By: Cabanas,Alissa RN on 12/20/2019 18:48 PST
Order Details: 1 tab, Oral, Tab, Once, Administration Type DOT, First Dose: 12/20/19 7:00:00 PM PST, Stop Date: 12/20/19 7:16:19 PM PST
Order Comment: ***Crush and Float***

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID: 33039370 Print Date/Time: 9/11/2020 10:29 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

No UOF Per Gutierrez. | OC Spray

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

# MEDICAL REPORT OF INJURY OR UNUSUAL OCCURRENCE

CDCR 7219 (Rev. 01/18)

Page 1 of 2

| NAME OF INSTITUTION | LOCATION OF EVALUATION | DATE |
|---|---|---|
| CRC | Holding cell 1, C-program | 12-20-19 |

REASON FOR REPORT ☐ ALLEGATION ☐ ON THE JOB INJURY ☐ USE OF FORCE ☐ INJURY ☐ OTM RETURNS ☐ UNUSUAL OCCURRENCE ☒ PRE AD/SEG ADMISSION ☐ R&R ☐ OTHER

| NAME LAST, FIRST | CDCR NUMBER | PERNR / INST. ID # | VISITOR ID # (SOMS) |
|---|---|---|---|
| Lockamore, Shawntez | BH0391 | N/A | N/A |

| PLACE OF OCCURRENCE | DATE OF OCCURRENCE | TIME OF OCCURRENCE | TIME SEEN | RN NOTIFIED TIME | PHYSICIAN NOTIFIED TIME |
|---|---|---|---|---|---|
| 307 | 12-20-19 | 1218 | 1250 | 1249 | NA. |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

none.

| INJURIES FOUND? | YES / NO |
|---|---|
| Abrasion/Scratch | (1) |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| Swollen Area | 10 |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | (14) |
| Skin Flap | 15 |
| Pre-Existing | 16 |
| Other | 17 |
| | 18 |
| Chemical Agent Exposure? | YES / (NO) |
| Chem. Agent Exposure Area | EX |
| Decontaminated w/ Water? | YES / (NO) / REFUSED |
| Decontaminated w/ Air? | YES / (NO) / REFUSED |
| Self-decontamination instructions given? | YES / (NO) |
| Staff issued Exposure packet? | YES / (NO) |

Right | Left | Front | Back

14 | 1

Q 15 min. check times

| Initial | 1st Check |
|---|---|
| n/A | n/A |
| **2nd Check** | **Final** |
| n/A | n/A. |

TIME/DISPOSITION
1257 Released to Custody Staff.

| REPORT COMPLETED BY/TITLE (PRINT AND SIGN) | PERNR / INST. ID # | RDO's | ASSIGNMENT AREA |
|---|---|---|---|
| L. Guthrie-Reed RN [signature] | 122779 | Sun/Mon | TTA |



5

ILB:3b49078f-1093-4ab4-a586-a88a2cb82dbc

# RULES VIOLATION REPORT

| CDC NUMBER BH6391 | INMATE'S NAME ROCKEMORE, SHAUNTEZ K. | EPRD 09/22/2027 | FACILITY CRC-Facility C | HOUSING LOCATION CRC-C - C 307 1 - 000008L |
|---|---|---|---|---|
| VIOLATION DATE 12/20/2019 | VIOLATION TIME 12:10:00 | VIOLATION LOCATION CRC-Facility C - HOUSING UNIT | | WITH STG NEXUS No |

Did the reporting employee ensure the inmate understands (to the best of his/her ability) the consequences of the continued misconduct? N/A

Did the reporting employee take into consideration the severity of the inmate's disability and the need for adaptive support services when determining the method of discipline? N/A

CIRCUMSTANCES OF VIOLATION

On Friday December 20, 2019, at approximately 1210 Hours, while working as the Facility C Dorm 306 Officer, I was standing in the Facility C Corridor monitoring the unlock, when I observed an inmate later identified as Inmate Rockemore, S., (CDCR # BH6391, Dorm 307/08L) walking towards me with clenched fists. Inmate Rockemore addressed me in a loud aggressive manner and stated "Why you staring at me?!" Due to Inmate Rockemore's demeanor, aggressive tone, and posture, I ordered him to turn around and place his hands behind his back in order to be placed in handcuffs. Inmate Rockemore complied with my order and I placed handcuffs on him. I made an announcement via institutional radio for any Facility C Security Patrol Officers to respond to the Corridor adjacent to Dorm 307 for an inmate in restraints. Correctional Officer M. Vazquez responded to my location from Dorm 307. I conducted a clothed body search of Inmate Rockemore for contraband with negative results. I began to escort Inmate Rockemore towards the Facility C Program Office with Officer Vazquez and my cover. During the escort, Inmate Rockemore began aggressively moving his upper torso from left to right and began pulling away from me. I stopped escorting and ordered Inmate Rockemore to "STOP RESISTING!" to which he did not comply. Inmate Rockemore continued twisting his upper torso in an attempt to pull away from me. I ordered Inmate Rockemore again to "STOP RESISTING!" Inmate Rockemore continued his resistive behavior. Inmate Rockemore then struck me in the lower abdominal area with his right elbow. I ordered Inmate Rockemore to "GET DOWN!" Inmate Rockemore posed an imminent threat. In order to subdue an attacker, to overcome resistance, to effect custody, and to gain compliance with my lawful orders, I utilized an immediate use of Physical Force by grabbing his right arm with my left and right hands and utilizing my physical strength to force Inmate Rockemore to the ground in a prone position. I attempted to initiate a Code 1 response via institutional radio. Once the microphone was keyed, it began to beep not allowing me to communicate with Central Control. I ordered Inmate Rockemore to "STAY DOWN AND DON'T GET UP!" Inmate Rockemore complied with my order negating the further use of force. I observed Correctional Officer L Castellanos responding to my position. Officer Castellanos assumed custody of Inmate Rockemore from me. I observed Correctional Officer R. Gutierrez respond to Officer Castellanos and Inmate Rockemore's position. Officer Castellanos and Gutierrez assisted Inmate Rockemore to his feet. Officers Castellanos and Gutierrez escorted Inmate Rockemore to the Facility C Program Office. I proceeded to the Facility C Program Office and informed Correctional Sergeant C. Fortson what had transpired and that I had utilized Physical Force on Inmate Rockemore.

This concludes my involvement in this incident
pern#101789

| REPORTING EMPLOYEE | TITLE | ASSIGNMENT | RDO | DATE: |
|---|---|---|---|---|
| V. Aguirre | CO | C 306 FLR | M/T | 12/26/2019 |





SHAUNTEZ ROCKEMORE
BH6391
CSP, 4A4R-22
PO Box 3476
CORCORAN CA 93212

FOREVER / USA
FOREVER / USA
FOREVER / USA

RECEIVED
CLERK, U.S. DISTRICT COURT
MAR 2 9 2021
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT of CALIFORNIA
255 EAST TEMPLE STREET
SUITE TS-134
LOS ANGELES, CALIFORNIA 90012

ATTENTION PRO SE CLERK

M. PORTER UTA M. PARK 3/24/21